Approved: _____
LINDSEY KEENAN
Assistant United States Attorney

Before:   THE HONORABLE JUDITH C. McCARTHY
          United States Magistrate Judge
          Southern District of New York

---------------------------------- X

UNITED STATES OF AMERICA             :   19mag2883
                                         **COMPLAINT**
       - v. -                        :
                                         Violations of 21 U.S.C.
JAMAL NEWKIRK,                       :   846
   a/k/a "HOOD,"
                                         COUNTY OF OFFENSE:
                                     :   ORANGE

                    Defendant.

---------------------------------- X

SOUTHERN DISTRICT OF NEW YORK, ss.:

       ANDREI PETROV, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

COUNT ONE

(Conspiracy)

       1.    From at least in or about February 2019 to on or about March 20, 2019, in the Southern District of New York, JAMAL NEWKIRK, a/k/a "Hood," the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

       2.    It was a part and an object of the conspiracy that JAMAL NEWKIRK, a/k/a "Hood," the defendant, and others known and unknown, would and did possess with the intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1).

       3.    The controlled substances involved in the offense were (1) mixtures and substances containing detectable amount of cocaine, in violation of 21 U.S.C. § 841(b)(1)(C); (2) mixtures

2

and substances containing a detectable amount of heroin, in violation of 21 U.S.C. § 841(b)(1)(C); (3) and mixtures and substances containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, commonly known as Fentanyl, in violation of 21 U.S.C. § 841(b)(1)(C).

(Title 21, United States Code, Section 846.)

The bases for my knowledge and the foregoing charges are, in part, as follows:

4. I am a Special Agent with the FBI, and I have been personally involved in the investigation of this matter. My duties and responsibilities include the investigation of narcotics offenses, among other crimes. I base this affidavit on that personal experience, as well as on my conversations with other law enforcement officers, and my examination of various reports and records. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5. Since at least in or about February 2019, the FBI, Drug Enforcement Administration ("DEA"), City of Newburgh Police Department, Town of New Windsor Police Department, and Orange County Sheriff's Office have been investigating JAMAL NEWKIRK, a/k/a "Hood," the defendant, and others known and unknown, for narcotics trafficking in and around Newburgh, New York.

6. On at least eight occasions between February 2019 and on or about March 20, 2019, a confidential informant ("CI")[1], accompanied by an undercover officer (the "UC"), or the UC

---

[1] The confidential informant was recently arrested by the New Windsor Police Department for narcotics possession, and has been assisting law enforcement in hopes of consideration for leniency in the narcotics possession case. The CI also has prior arrests for narcotics possession and petit larceny. The information that the CI has provided in connection with this investigation has proven reliable, and has been independently corroborated by other evidence, including physical surveillance of the controlled purchases by law enforcement agents directly.

3

him/herself, purchased narcotics, namely heroin (some of which has been mixed with fentanyl) or crack cocaine, from JAMAL NEWKIRK, a/k/a "Hood," the defendant. Below are descriptions of some of the narcotics transactions between the CI and/or the UC and NEWKIRK.

7. From my participation in this investigation and discussions with other law enforcement officers, including the UC, I have learned the following about a transaction between the CI and JAMAL NEWKIRK, a/k/a "Hood," the defendant, that took place on or about February 4, 2019:

a. In the presence and at the direction of law enforcement, the CI placed a call to the call number 845-728-4198 (the "4198 Phone"), which the CI believed belonged to an individual the CI knew as "Hood." During the call, the CI and the man agreed to meet at a house on Carson Avenue in Newburgh, New York (the "Carson Avenue Address") to complete a narcotics transaction.

b. Law enforcement officers, who had previously searched the CI for contraband and found none, outfitted the CI with an audio recording device. The UC then drove the CI to the Carson Avenue Address and gave the CI several hundred dollars to purchase narcotics.

c. The CI exited the car, and the UC observed a man whose appearance matched that of a law enforcement photograph of NEWKIRK, exit the house and meet the CI. The UC observed as the man spoke to the CI, returned to the house, and exited, where he exchanged something with the CI.

d. The CI returned to the car, and gave the UC the substance received from the man during the narcotics transaction. The CI confirmed the man who sold him the substance was the same person depicted in law enforcement's photograph of NEWKIRK, who was known to the CI as "Hood." This substance later field-tested positive for heroin, and weighed approximately 2.23 grams.

4

8. From my participation in this investigation and discussions with other law enforcement officers, including the UC, I have learned the following about a transaction between the CI and JAMAL NEWKIRK, a/k/a "Hood," the defendant, that took place on or about February 6, 2019:

    a. In the presence and at the direction of law enforcement, the CI placed multiple calls to the 4198 Phone, during which the CI arranged to meet the person using the 4198 Phone to engage in a narcotics transaction.

    b. Law enforcement officers, who had previously searched the CI for contraband and found none, outfitted the CI with an audio recording device. The UC then drove the CI to a location near the Carson Avenue Address and gave the CI several hundred dollars to purchase narcotics.

    c. The CI purchased a substance from NEWKIRK, which later field-tested positive for the presence of cocaine, and weighed approximately 7.1 grams. NEWKIRK represented to the CI that this substance was crack cocaine.

9. From my participation in this investigation and discussions with other law enforcement officers, including the UC, I have learned the following about a transaction between the CI and JAMAL NEWKIRK, a/k/a "Hood," the defendant, on or about February 11, 2019:

    a. In the presence and at the direction of law enforcement, the CI placed a call to the 4198 Phone to arrange a narcotics transaction.

    b. Law enforcement officers, who had previously searched the CI for contraband and found none, outfitted the CI with an audio recording device. The UC then drove the CI to a different location in Newburgh, New York, as directed by the man using the 4198 Phone, and gave the CI several hundred dollars to purchase narcotics.

    c. The CI then met with NEWKIRK and purchased narcotics; one of the substances field-tested positive for the presence of fentanyl and heroin and weighed approximately .75 grams. The other field-tested positive for the presence cocaine and weighed approximately 3.5 grams. NEWKIRK represented to the CI that the substance weighing approximately 3.5 grams was crack cocaine.

10. From my participation in this investigation and discussions with other law enforcement officers, including the UC, I have learned the following about a transaction between the CI and JAMAL NEWKIRK, a/k/a "Hood," the defendant, on or about February 18, 2019:

    a. In the presence and at the direction of law enforcement, the CI placed a call to the 4198 Phone to arrange a narcotics transaction.

    b. Law enforcement officers, who had previously searched the CI for contraband and found none, outfitted the CI with an audio recording device. The UC then drove the CI to a location near the Carson Avenue Address, and gave the CI several hundred dollars to purchase narcotics.

    c. The UC observed the CI meet with NEWKIRK.

    d. The CI purchased substances from NEWKIRK; one of the substances field-tested positive for the presence of heroin, and weighed approximately 1 gram. The other substance field-tested positive for the presence of cocaine and weighed approximately 5 grams. NEWKIRK represented to the CI that the substance weighing approximately 5 grams was crack cocaine.

11. From my participation in this investigation and discussions with other law enforcement officers, including the UC, I have learned the following about a transaction between the UC and JAMAL NEWKIRK, a/k/a "Hood," the defendant, on or about February 21, 2019:

    a. UC was equipped with a recording device, and drove alone to the Carson Avenue Address to make a controlled purchase.

    b. At the Carson Avenue Address, an individual ("Individual-1") gave the UC 4 bundles of what he represented to be heroin from a stash on the front porch, took the $400 from the UC, and told the UC to wait. Several minutes later, Individual-1 returned to retrieve a metal can from the porch, and went back inside. JAMAL NEWKIRK, a/k/a "Hood," the defendant, opened the door, saw the UC, and closed the door, after which Individual-1 came outside, and handed the UC a bag which contained several substances.

    c. One of the substances Individual-1 gave the UC field tested positive for cocaine, and weighed approximately 2.5 grams. The other substance Individual-1 gave the UC field

tested positive for Fentanyl, and weighed approximately 1 gram.

12. From my participation in this investigation and discussions with other law enforcement officers, including the UC, I have learned that on or about February 27, 2019, the UC placed a call to the 4198 Phone to arrange a controlled purchase. The man using the 4198 Phone, who the UC believed to be JAMAL NEWKIRK, a/k/a "Hood," the defendant, stated in substance and in part that he had a new phone number. The call was recorded. Thereafter, the man called the UC from another phone (the "9196 Phone"), and stated in substance and in part that the UC should use the 9196 Phone going forward.

13. From my participation in this investigation and discussions with other law enforcement officers, including the UC, I have learned the following about a transaction between the UC and JAMAL NEWKIRK, a/k/a "Hood," the defendant, on or about February 27, 2019:

a. After speaking with the man using the 4198 Phone, the UC was provided with a listening device, and a video device, and drove to the Carson Avenue Address.

b. The UC walked to the front porch of the Carson Avenue Address, and purchased narcotics from NEWKIKRK.

c. One of the substances NEWKIRK sold the UC weighed approximately .25 grams and field tested positive for the presence of fentanyl. The other substance weighed approximately 9.6 grams and field tested positive for the presence of cocaine.

14. From my participation in this investigation and discussions with other law enforcement officers, including the UC, I have learned the following about a transaction between the UC and JAMAL NEWKIRK, a/k/a "Hood," the defendant, on or about March 12, 2019:

a. The UC placed a call to the 9196 Phone, and requested, in substance and in part: "a bun and three hundred hard." In my training and experience, "hard" is a reference to crack cocaine.

b. The man using the 9196 Phone, responded in substance and in part: "Call me when you get to Carson and Monument." The call was recorded.

7

        c.    Thereafter, the UC was provided with a listening device, and an audio recording device. The UC drove to the corner of Carson Avenue and Monument Street, in Newburgh, New York, and called the 9196 Phone stating in substance and in part: "I'm here." Approximately five minutes later, JAMAL NEWKIRK, a/k/a "Hood," the defendant, called the UC and stated, in substance and in part, that the UC should follow his car. At the 130 block of Carson Avenue, NEWKIRK got out of his car and handed the UC a bag in exchange for $350. The transaction was recorded with an audio device.

        d.    One of the substances NEWKIRK provided the UC weighed approximately .25 grams and field tested positive for the presence of heroin and fentanyl; the other substance weighed approximately 3.4 grams, and field tested positive for the presence of cocaine, and was in the form of crack cocaine.

        15.    From my participation in this investigation and discussions with other law enforcement officers, including the UC, I have learned that some time before March 20, 2019, the CI and UC learned from JAMAL NEWKIRK, a/k/a "Hood," the defendant, that he had moved to a location other than the Carson Avenue Address. I have also learned from my conversations with other law enforcement officers that on or about March 20, 2019, the CI purchased a substance from NEWKIRK for $450, at a different location in Newburgh. NEWKIRK told the CI, in substance and in part, that he only had "hard" available. Based on my training, experience, and participation in this investigation, I know that "hard" is a common code for crack cocaine. The substance the CI bought on March 20 field-tested positive for the presence of cocaine, which I believe, based on NEWKIRK'S statement to the CI, to be crack cocaine.

8

WHEREFORE, deponent respectfully requests that JAMAL NEWKIRK, a/k/a "Hood," the defendant, be imprisoned or bailed, as the case may be.

_____
SPECIAL AGENT ANDREI PETROV
~~DRUG ENFORCEMENT ADMINSTRATION~~
Federal Bureau of Investigation

Sworn to before me this
21st day of March 2019

_____
THE HONORABLE JUDITH C. McCARTHY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK